UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                      :

JOSEPHINE TELL,                                 :

                                Plaintiff,    :

                                                      :

                     -against-                    :

                                                        :

9 WEST 73RD STREET LLC, THE CITY OF   :
NEW YORK, BRUSCO GROUP INC.,         :
WESTSIDE MANAGEMENT CORP., BRUSCO :            24-CV-7161 (VEC)
CONTRACTING CORP., RICK ELEZI          :
MANAGEMENT INC. *doing business as* R.E.M :        OPINION & ORDER
RESIDENTIAL, L&N REALTY CO, JNP JC     :
BRUSCO ASSOCIATES, JPN REALTY LLC,   :
NICHOLAS E. BRUSCO, JOSEPH O. BRUSCO, :
RICK ELEZI, SHPRESA ELEZI, JOSE         :
VARGAS, GARY H. ROSE, JPN J REALTY    :
LLC, JOHN DOES 1-20, and ABC            :
CORPORATION "1" THROUGH "5,"         :

                                                        :

                                                        :

                                    Defendants.  :

                                                         :

------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Following a trial in New York Housing Court that resulted in Plaintiff Josephine Tell being evicted from her apartment, she initiated this action, raising claims pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(b), 3617, and various state and local causes of action. The Complaint names various entities and individuals associated with the ownership and management of Plaintiff's apartment building, as well as the City of New York and two employees of the New York City Police Department ("NYPD"), as Defendants. All Defendants moved to dismiss. *See* City of New York & Jose Vargas Mot. to Dismiss, Dkt. 52; 9 West 73rd Street LLC ("9 West 73rd"), Brusco Group Inc., Westside Management Corp., Brusco Contracting Corp., L&N Realty Co., JNP JC Brusco Associates, JPN J Realty LLC, Nicholas

1

Brusco & Joseph Brusco Mot. to Dismiss, Dkt. 54; Rose Mot. to Dismiss, Dkt. 57; Rick Elezi, Shpresa Elezi & Rick Elezi Management Inc. Mot. to Dismiss, Dkt. 58 (collectively, the "Motions" or "Mots."). Plaintiff opposed. *See* Opposition to Mots. (the "Opposition" or "Opp."), Dkt. 64. The Motions are GRANTED as to the FHA claims. The Court declines to exercise supplemental jurisdiction over the remaining claims and DISMISSES the state law claims without prejudice.

## BACKGROUND[1]

Plaintiff, a transgender woman, previously resided in Apartment 1B (the "Apartment"), 9 West 73rd Street (the "Building"). Compl., Dkt. 1 ¶ 4. That Building was owned by Defendants 9 West 73rd, Brusco Group Inc., Westside Management Corp., Brusco Contracting Corp., L&N Realty Co., JNP JC Brusco Associates, and JPN J Realty LLC (collectively, the "Owners"). *Id.* ¶ 5. Defendant Rick Elezi Management Inc. managed the Building, and Defendants Rick Elezi, Shpresa Elezi, Nicholas Brusco, and Joseph Brusco oversaw day-to-day operations. *Id.* ¶¶ 7–9.

In June 2022, Plaintiff was raped and sexually assaulted in the Apartment by the Building's superintendent, who was employed by the Owners. *Id.* ¶ 13. The rape caused Plaintiff to suffer a stroke, resulting in vision problems that required hospitalization. *Id.* Shortly after the rape, Plaintiff complained to the Owners. *Id.* ¶ 14. Plaintiff alleges that the Owners "contacted [her] in the hospital," but she does not allege what they said to her or whether they responded to the rape in any other way. *Id.*

---

[1] The Court assumes the truth of the well-pled factual allegations in the Complaint for purposes of deciding the Motion to Dismiss. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019). The Court also takes judicial notice of documents incorporated by reference in the Complaint, including the filings in *9 West 73rd Street LLC v. Alok Dar et al.*, Index No. LT-316412-22/NY (N.Y. Civ. Ct.), to the extent the parties do not dispute their authenticity. *See Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 306 (S.D.N.Y. 2019) (at the motion to dismiss phase, "[t]he Court may take judicial notice of court filings 'not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings'") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

In October 2022, Defendant 9 West 73rd, by and through Defendant Joseph Brusco, filed a petition in New York County Housing Court alleging that Alok Dar, the legal tenant of Apartment 1B, and Jane Doe, his undertenant (later revealed to be Plaintiff), had failed to pay rent for the previous month. *See 9 West 73rd Street LLC v. Alok Dar et al.*, Index No. LT-316412-22/NY (N.Y. Civ. Ct.) (the "Housing Court Action"); Van Dusen Decl. Ex. B, Dkt. 58-3. The petition sought to remove Dar and Plaintiff from the Apartment. *Id.* at 2. In their answer to the petition, Dar and Plaintiff issued a general denial and raised several counterclaims, including claims of harassment. Van Dusen Decl. Ex. C, Dkt. 58-4 (the "Answer") ¶¶ 1, 12–13, 19, 22–23. The Answer also raised a claim of retaliatory eviction pursuant to New York Real Property Law § 223-b; Plaintiff alleged that Defendant filed the petition "in order to retaliate for [Plaintiff's] complaint of sexual assault and rape by two employees committed within the scope of their duties as employees of petitioner and within the premises on two separate occasions." Van Dusen Decl. Ex. C ¶ 25.[2] In reply, 9 West 73rd denied Plaintiff's claims. Van Dusen Decl. Ex. D, Dkt. 58-5 ¶ 20. It also asserted that the rapes "never happened" and that Plaintiff "is a transsexual 'escort' who advertised [her] sexual services online . . . and seduced the purported rapist here—a 22-year-old employee of the janitorial maintenance company." *Id.* On reply, and in subsequent proceedings, 9 West 73rd also presented evidence (which Plaintiff disputes) that Plaintiff had advertised sexual services online, charging $800 for one hour of sex at the Apartment. *Id.*; Compl. ¶ 15.

---

[2] The Complaint in this action does not allege that Plaintiff was raped or sexual assaulted by a second employee.

The trial in the Housing Court Action began in August 2023.  Van Dusen Decl. Ex. E, Dkt. 58-6 at 1.  Plaintiff did not appear at the trial, although Dar and his counsel did.  *Id.* at 2.  Following trial, the Court issued judgment in favor of 9 West 73rd.  *Id.* at 4.

Plaintiff appealed the judgment and obtained a stay pending appeal.  Compl. ¶ 16.  In its opposition to the motion for a stay, 9 West 73rd filed affidavits from employees who claimed that they had received complaints about Plaintiff from other residents of the Building, who suspected that she was a sex worker.  *Id.* ¶¶ 17–18.  It also filed affidavits stating that residents of the Building had complained about Plaintiff's alleged prostitution to the NYPD, which purportedly assigned a detective, Jose Vargas, to investigate.  *Id.* ¶¶ 18(d)–(e).  According to the affidavits, Detective Vargas confirmed that Plaintiff was engaging in sex work at the Apartment but declined to investigate further.  *Id.* ¶¶ 18(d)–(e), 22–24.  Plaintiff disputed the allegations in the affidavits, claiming both that she was not a sex worker and that there were no tenant complaints to the NYPD or the Owners of suspected prostitution.  *Id.* ¶¶ 26, 28.

Plaintiff filed this action in September 2024, bringing claims pursuant to the FHA, 42 U.S.C. §§ 3604(b), 3617, and various state and local causes of action.  *See* Compl.  Defendants moved to dismiss.  *See* Mots.  Plaintiff opposed.  *See* Opp.

## DISCUSSION

### I.    Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Conclusory allegations or "legal conclusions

masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alteration in original) (citation omitted).

On a motion to dismiss, the Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cleaned up).

## II.    Plaintiff Has Failed to State a Claim Pursuant to the Fair Housing Act

### A.    *Res Judicata*

Before discussing the merits of Plaintiff's FHA claims, the Court will briefly address the doctrine of *res judicata*, which several Defendants argue should preclude Plaintiff from pursuing some or all of her claims. "Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (cleaned up). Before the Court considers a *res judicata* defense, "[i]t must first be determined that the second suit involves the same 'claim'—or 'nucleus of operative fact'—as the first suit." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997). To make that determination, the Court must "look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting Restatement (Second) of Judgments § 24(b)). "Also dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Sure–Snap*

*Corp. v. State St. Bank and Tr. Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (internal quotation marks omitted).

It is difficult to determine the extent to which Plaintiff's FHA claims may be precluded on *res judicata* grounds because the claims she intends to make, and the nuclei of operative facts from which they arise, are unclear. To the extent Plaintiff intends to argue that the eviction itself was illegal, that argument would be precluded because it could have been raised as a defense in the Housing Court Action, and because a judgment from this Court invalidating the eviction would impair rights established via the Housing Court's judgment. *See Springer v. Lincoln Shore Owners, Inc*., No. 03-CV-4676 (FB) (KAM), 2007 WL 2403165, at *4–*5 (E.D.N.Y. Aug. 16, 2007) (federal civil rights claim challenging the termination of a lease was precluded because the claim could have been raised as a defense in housing court). If, however, Plaintiff's claims arise out of conduct unrelated to the eviction itself, they may be sufficiently independent from claims that were raised or could have been raised in the Housing Court Action to avoid preclusion. *See 273 Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*, 330 F. Supp. 3d 778, 789–90 (E.D.N.Y. 2018) (tenant's FHA and state human rights law claims could proceed notwithstanding an eviction action in housing court because they arose out of events that "occurred prior to the eviction" and "d[id] not hinge on a review" of the validity of the eviction).

In her Complaint and Opposition, Plaintiff gives mixed signals about the basis for her FHA claims. In both submissions, she repeatedly characterizes the eviction as illegal, which strongly implies that she wishes to use this action to relitigate the Housing Court's order. *See* Compl. ¶¶ 11, 28; Opp. at 16–17. Other bases for the claim, however, appear to have little to do with the Housing Court Action. For example, she asserts that portions of Defendants' "discriminatory behavior" — specifically, comments that various Defendants made during a

6

hearing on Plaintiff's motion to stay the Housing Court's judgment pending appeal —

"continued after trial," and, hence, that her FHA claims encompass conduct that could not have

been addressed during the Housing Court Action. *Id.* at 10. She also argues in her Opposition

that Defendants violated the FHA by failing to take action after learning she was raped in June

2023. Opp. at 11–12. And, less clearly, she appears to argue that Officer Vargas's inquiry into

accusations of prostitution in the Building, which allegedly took place several months before her

eviction, was part of the harassment she endured while residing at the Apartment. *See* Compl.

¶¶ 22–26.

To the extent those are the bases for Plaintiff's FHA claims, it is not clear whether

Plaintiff could have raised them in the Housing Court Action. Moreover, because Plaintiff's

written submissions in the Housing Court Action were sparse and she ultimately abandoned them

by failing to appear at trial, the basis for the various counterclaims and defenses she raised in that

action, and the extent to which the Housing Court would have had jurisdiction to adjudicate

them, remains a mystery. *See, e.g.*, Answer ¶¶ 10–11 (Plaintiff and Dar alleging in the Housing

Court Action that 9 West 73rd "engaged in a course of conduct with the intention of inflicting

mental anguish and distress" upon them); *id.* ¶¶ 12–13, 22–23 (Plaintiff and Dar raising claims of

harassment against 9 West 73rd in the Housing Court Action, apparently on the basis of its

failure to make necessary repairs and maintain habitable conditions); *id.* ¶¶ 24–26 (Plaintiff and

Dar raising a retaliatory eviction defense pursuant to N.Y. Real Property Law § 223-b on the

ground that she was raped by "two employees . . . on two separate occasions," but not specifying

whether either of those employees was the superintendent referenced in the Complaint of this

action).

In short, the record from the Housing Court Action, and the parties' accounts of it, are simply too scattershot for the Court to assess the full extent of its preclusive effect. Regardless, the Court need not decide the precise limits of *res judicata* in this action because Plaintiff fails to state an FHA claim on the merits.

**B.    Plaintiff's Fails to State a Claim of Housing Discrimination Pursuant to 42 U.S.C. § 3604(b)**

The FHA makes it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex . . . ." 42 U.S.C. § 3604(b). Plaintiff's theory of housing discrimination relies on the notion that Defendants created a hostile housing environment. *See* Opp. at 11–14. "Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a hostile environment by individuals who have control or authority over the terms, conditions, or privileges of sale or rental of a dwelling, similar to the prohibition imposed by Title VII [of the Civil Rights Act] against the creation of a hostile work environment." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019) (internal quotation marks omitted) (collecting cases). "To set out a prima facie case that a landlord has created a hostile housing environment, a plaintiff must establish: '(1) that she was subjected to harassment sufficiently pervasive and severe so as to create a hostile housing environment, (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the [housing provider].'" *Leon v. Kearney*, No. 23-CV-5182 (DEH), 2024 WL 3729004, at *3 (S.D.N.Y. Aug. 7, 2024) (quoting *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19-2771-CV, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021)). The Court evaluates the severity and pervasiveness of the harassing conduct "from the perspective of a reasonable person

in the aggrieved person's position." *A.L.M. ex rel. Moore*, 2021 WL 5121137, at *1 (quoting 24 C.F.R. § 100.600(a)(2)(i)(C)).

    i.  *Claims Against Gary Rose, Jose Vargas, and the City of New York*

The Complaint's allegations involving Defendants Gary Rose, Jose Vargas, and the City of New York are particularly sparse. With respect to Rose, the Complaint is entirely devoid of any non-conclusory allegations that even mention him. The Complaint simply identifies him as a New York City Marshal who "conspired with [D]efendants and their attorneys . . . to illegally evict [P]laintiff" from the Apartment. Compl. ¶ 11. At no point does the Complaint allege any conduct in which he engaged, nor does it contain any specific allegations about Rose's relationship with Plaintiff, Defendants, or any of the events that gave rise to this action. The Complaint, therefore, cannot possibly state a claim against Rose.

The Complaint contains more specific allegations about Detective Vargas, inasmuch as it references his inquiry into Plaintiff's alleged use of the Apartment to engage in sex work, *see id.* ¶¶ 22–26, but it falls short of articulating a coherent FHA claim against either him or the City of New York (his alleged employer). Conduct is actionable pursuant to the FHA if it constitutes "discrimat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b). But Plaintiff does not allege that Detective Vargas or the City played any role in setting the terms, conditions, or privileges of Plaintiff's rental of the Apartment, nor that they provided any services in connection therewith. Plaintiff's allegations involving the City and Vargas relate exclusively to the NYPD's investigation of Plaintiff's use of the Apartment. Compl. ¶¶ 22–26, 34–35. Accordingly, the Court can discern no basis for the City or Vargas to be liable pursuant to the FHA.

> ii.    *Claims Against the Remaining Defendants*

The remaining Defendants could conceivably be subject to liability pursuant to the FHA because they either own the Building or were involved in its management and operations, *see id.* ¶¶ 7–9, but the Complaint fails to allege facts from which the Court can piece together a plausible claim. Specifically, Plaintiff has failed to allege either that Defendants engaged in pervasive and severe harassment of her or that the alleged harassment was because of her membership in a protected class.

As with the other allegations in the Complaint, the basis for Plaintiff's theory that she was subjected to harassment that created a hostile housing environment is not clear. It appears, however, that Plaintiff alleges that Defendants engaged in harassment by (1) employing the man who raped her, (2) initiating eviction proceedings, (3) inquiring into accusations that Plaintiff was a sex worker, and (4) repeating those accusations over the course of proceedings in the Housing Court Action, Defendants subjected Plaintiff to a hostile housing environment. *See* Opp. at 11–14. The Court will address each portion of the theory in turn.

*First*, with respect to the argument that the rape of Plaintiff by Defendants' employee created a hostile housing environment, it is "well established that the [FHA] provides for vicarious liability" in accordance with "traditional vicarious liability rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna v. Al-Awadi*, 622 F.3d 123, 144–45 (2d Cir. 2010) (quoting *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)). Notwithstanding Plaintiff's conclusory assertion that the superintendent acted "at the direction of, and with the consent, encouragement, knowledge, and ratification" of the Defendants, Compl. ¶ 32, she offers no factual allegations whatsoever to suggest that he

10

committed the alleged rape for any employment-related purpose.  Accordingly, Plaintiff's

allegation that an employee of Defendants raped her cannot, on its own, give rise to liability for

Defendants pursuant to the FHA.[3]

To the extent Plaintiff intends to argue that Defendants' conduct after learning that

Plaintiff was raped constituted harassment, that argument is entirely without legal or factual

support.  In determining whether conduct constitutes "pervasive and severe" harassment, courts

consider "the nature of the conduct, the context in which the incident(s) occurred, the severity,

scope, frequency, duration, and location of the conduct, and the relationships of the persons

involved."  *A.L.M. ex rel. Moore*, 2021 WL 5121137, at *1 (quoting 24 C.F.R.

§ 100.600(a)(2)(i)(A)).  Plaintiff does not allege that Defendants engaged in any conduct

whatsoever after learning of the rape, other than by contacting her in the hospital (though it is

unclear what she alleges they said) and initiating eviction proceedings approximately four

months later.  Compl. ¶ 14.  She also does not allege that she ever saw or interacted with the

assailant again, or even that he remained employed by any Defendant after the incident.  Put

simply, there is no basis from which to infer that any Defendant's response to Plaintiff's alleged

rape constituted harassment within the meaning of the FHA.

*Second*, if Plaintiff intends to argue that her eviction was retaliatory or otherwise illegal,

that is a claim that Plaintiff could have raised — and indeed, *did* raise, before failing to appear

for trial — in the Housing Court Action.[4]  *See* Answer ¶¶ 24–26.  Accordingly, for the reasons

---

[3]    To the extent Plaintiff intends to argue that the rape gave rise to FHA liability as to the superintendent himself, who is named in the Complaint as a John Doe Defendant, the claim would be time-barred:  FHA claims must be brought "not later than 2 years after the occurrence . . . of an alleged discriminatory housing practice," and the rape is alleged to have occurred 26 months before this action was filed.  42 U.S.C. § 3613(a)(1)(A); Compl. ¶ 13.

[4]    In her Opposition, Plaintiff argues that *res judicata* is inapposite because the Housing Court dismissed without prejudice the counterclaims where she alluded to rape, harassment, and the prospect of retaliatory eviction. Opp. at 10.  Plaintiff misreads the record.  Although the judge in the Housing Court Action stated that any voluntary withdrawal of Plaintiff's counterclaims would "ha[ve] to be without prejudice" because she lacked jurisdiction over

set forth in Section II.A. of this Opinion, any argument that the eviction itself was illegal is barred by *res judicata*. *See Springer*, 2007 WL 2403165, at *4–*5.

*Third*, to the extent Plaintiff intends to challenge as harassment the comments that Defendants made during the Housing Court Action proceedings, in which they denied that the rape occurred and accused Plaintiff of being a sex worker, it is unclear how those comments contributed to a hostile *housing* environment.  Even assuming the comments made about Plaintiff are false and that Defendants knew the comments were false when they made them (despite the absence of any non-conclusory allegations in the Complaint to support those inferences), the Complaint offers no insight into how comments made in Plaintiff's eviction proceeding affected her housing environment.  *See D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 367 (S.D.N.Y. 2017) (to state a hostile housing environment claim pursuant to the FHA, Plaintiff must allege "a relationship between the discriminatory conduct and housing").  Indeed, it is not even clear from the Complaint whether Plaintiff lived in the Apartment during or after the eviction proceedings; although the judgment in the Housing Court Action has been stayed pending appeal, *see* Compl. ¶ 21, Plaintiff has alleged that she no longer resides in the Apartment, *see id.* ¶ 4 (Plaintiff "previously resided" in the Apartment).

*Fourth*, to the extent Plaintiff intends to argue that the Owners' and NYPD's inquiry into alleged prostitution at the Building constituted harassment, that theory is unsupported by any

them, there is no evidence that Plaintiff actually *did* successfully withdraw her counterclaims.  Kamal Decl. Ex. H, Dkt. 66-8 at 114.  Regardless, the status of Plaintiff's counterclaims in the Housing Court Action is irrelevant; what matters, for *res judicata* purposes, is that any effort to challenge the legality of Plaintiff's eviction could have been raised as a *defense* in that action.  *See German v. Fed. Home Loan Mortg. Corp.*, 899 F. Supp. 1155, 1165 (S.D.N.Y. 1995) ("New York does not prevent defendants in eviction proceedings from raising retaliatory eviction as a defense.  In fact, the right to assert a retaliatory defense has been codified in [N.Y. Real Property Law] § 223–b and exists outside of New York statutory law."); *Greco v. Local.com Corp.*, 806 F. Supp. 2d 653, 657 (S.D.N.Y. 2011) (*res judicata* "precludes parties or their privies from relitigating issues that were *or could have been* raised" in a prior action (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)).

plausible factual allegations. Plaintiff does not allege that she was even aware of the Owners and NYPD's inquiry while it was taking place, let alone that the inquiry affected her in a way that could constitute harassment. It is difficult even to discern what NYPD's inquiry entailed; all Plaintiff alleges is that another resident of the Building saw Officer Vargas "snooping around in the basement" of the Building while "investigating complaints of sex-trafficking/prostitution." *Id.* ¶ 22. That same resident later texted with Officer Vargas about his "surveillance" of the Building and claimed that she saw him "entering a van outside the . . . Building." *Id.* ¶ 24. Plaintiff does not allege that Officer Vargas (or anyone else) interacted with her or the Apartment in any way. As it stands, Plaintiff has simply alleged that Officer Vargas was once present in the basement of the Building and once entered a vehicle outside the Building. Neither of those things in any way constitute "severe or pervasive" unwelcome conduct directed toward Plaintiff. 24 C.F.R. § 100.600(a)(2).

Even if Plaintiff could allege harassment on the basis of any of the four above-described theories, she fails to allege any facts that tend to "establish that the harassment occurred *because* of her membership in a protected class." *A.L.M. ex rel. Moore*, 2021 WL 5121137, at *2 (emphasis added). As an initial matter, the Court notes that neither the law nor the parties' briefing are clear on whether Plaintiff, a transgender woman, is a member of a protected class for purposes of the FHA. Plaintiff alleges in the Complaint that she was discriminated against "on the basis of her sex, gender and sexual orientation." Compl. ¶ 39. In the Title VII context, the Supreme Court has recognized that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020). Neither the Supreme Court nor the Second Circuit have clarified, however, whether that same principle extends to the FHA context, although some other courts have done

13

so. *See, e.g.*, *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862–63 (7th Cir. 2018); *United States v. SSM Props., LLC*, 619 F. Supp. 3d 602, 606 (S.D. Miss. 2022); *Larocque v. Spring Green Corp.*, No. 22-CV-00249-MSM-PAS, 2024 WL 4198607, at *4 (D.R.I. Sept. 16, 2024).

Assuming the Second Circuit would extend the holding of *Bostock* to claims brought pursuant to the FHA, the Complaint would still fall far short of alleging a plausible discrimination claim. The Complaint does not, at any point, allege that Defendants treated Plaintiff any differently from similarly situated tenants who did not share her sex, gender, or sexual orientation, nor that they demonstrated animus against her because of those characteristics. Indeed, the sole moments in which a Defendant even referenced the fact that Plaintiff is transgender were in various filings in the Housing Court Action; in those filings, Defendants refer to Plaintiff as a "transsexual escort" or a "transgender escort." Compl. ¶¶ 15, 17(a) (internal quotation marks omitted). But those statements — even in the fragmented form in which they are presented in the Complaint — make clear that Defendants objected to Plaintiff's use of the Apartment to engage in illegal activity, not to her sex, gender, or sexual orientation. *See id.* ¶ 15 (Owner stated on reply in the Housing Court Action that Plaintiff "is a transsexual 'escort' who advertised [her] sexual services online, charging $800 for one hour of sex at the Premises"); *id.* ¶ 17(b) (Plaintiff advertises the Apartment "as the location where she sells sex").

Moreover, Defendants, in the challenged statements, repeatedly emphasize that they saw an online advertisement in which Plaintiff advertised sexual services to be delivered at the Apartment, undercutting any inference that Defendants' accusations were rooted in animus or bigoted stereotypes. *See id.* ¶¶ 15, 18(c), 20. Although Plaintiff asserts that the advertisement

14

"was fake revenge porn, generated to shame and discredit Plaintiff for complaining to [D]efendant owners," she pleads no non-conclusory facts from which the Court can infer that Defendants knew or should have known that the advertisement was fake. *Id.* ¶ 28. Absent such allegations, the Court can discern no basis from which to infer that Defendants' decision to initiate costly eviction proceedings and accuse Plaintiff of unlawful activity was rooted in animus toward Plaintiff because of her sex, gender, or sexual orientation, as opposed to a genuine belief that she had failed to pay rent and was using the Apartment for illegal sex work.

In short, Plaintiff fails to state claims pursuant to 42 U.S.C. § 3604(b) against any Defendant.

### C.    Plaintiff's Retaliation Claims Fails

Plaintiff also raises a claim of retaliation pursuant to 42 U.S.C. § 3617. To allege such a claim, Plaintiff must adequately allege facts that would allow the Court reasonably to infer that Defendants coerced, intimidated, threatened, or interfered with her exercise or enjoyment of housing "on account of [her] having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . ." 42 U.S.C. § 3617. "To establish an FHA claim under [§] 3617, a plaintiff must show (1) he exercised or aided or encouraged a protected individual in exercising their rights under the FHA and (2) as a result of his actions, he suffered coercion, intimidation, threats, interference or retaliation." *Johnson v. Levy*, 812 F. Supp. 2d 167, 179 (E.D.N.Y. 2011).

The Court cannot discern, and Plaintiff does not meaningfully attempt to explain, how any of the factual allegations in the Complaint could satisfy these elements. In her Opposition, Plaintiff asserts that the basis for her § 3617 claim is that "the conduct of Mr. Endres 'intimidate[d], threaten[ed], or interfere[d] with' the plaintiff in the enjoyment of the rights granted to [her] elsewhere in the Fair Housing Act." Opp. at 14. That argument is purely conclusory and, in any event, indecipherable; neither the Complaint nor any other portion of the

15

Opposition reference "Mr. Endres." Assuming Endres is the name of the man who Plaintiff claims raped her, any FHA claim arising out of the rape itself or Defendants' response to it fails for the reasons set forth in Section II.B.ii.

Accordingly, Plaintiff has not stated a claim for retaliation pursuant to § 3617.

### III.    The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining Claims

Having disposed of the only federal claims in the Complaint, the Court must determine whether to exercise supplemental jurisdiction over the remaining state and local law claims. To make that determination, the Court must consider whether declining jurisdiction serves the values of "economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (internal quotation marks and citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *KeyCite Red FlagCarnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In declining to exercise supplemental jurisdiction, the state law claims "may be dismissed without prejudice and left for resolution to state tribunals." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 613 F. Supp. 2d 437, 442 (S.D.N.Y. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)).

The Court finds no reason to depart from the ordinary rule that the exercise of federal jurisdiction over the remaining state law claims is inappropriate where all federal law claims have been eliminated well before trial. Discovery was stayed pending resolution of this motion, and no trial date has been set. *See* Joint Letter, Dkt. 75 at 1. Accordingly, the interests of

judicial economy, convenience, fairness, and comity would not be served by this Court retaining jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED with respect to Plaintiff's FHA claims.  The Court declines to exercise supplemental jurisdiction over the remaining claims.  The Clerk of the Court is respectfully directed to TERMINATE the open motions at Dkts. 52, 54, 57, and 58 and to CLOSE the case.


**SO ORDERED.**

**Date:  February 9, 2026**
      **New York, NY**

                **VALERIE CAPRONI**
                **United States District Judge**